Alfred DUFRESNE

v.

John MORAN, Director of Department of Corrections For the State of Rhode Island.

Civ. A. No. 81–0682B.

United States District Court, D. Rhode Island.

July 6, 1983.

Edward Gerstein, Providence, R.I., for plaintiff.

Sharon O'Keefe, Sp. Asst. Atty. Gen. for State of R.I., Providence, R.I., for defendant.

## OPINION

FRANCIS J. BOYLE, Chief Judge.

Petitioner seeks a Writ of Habeas Corpus pursuant to Title 28 U.S.C. § 2241 and § 2254. Petitioner is imprisoned at the Adult Correctional Institution (hereinafter ACI) Cranston, Rhode Island. Mr. Dufresne was prosecuted for the first-degree murder of his wife in the Superior Court of the State of Rhode Island. Petitioner initially pleaded not guilty. During the course of trial, after the State had presented its evidence, Petitioner pleaded guilty to second-degree murder. On April 12, 1977 the Petitioner was sentenced to forty years commitment at the ACI, fifteen years to be suspended. Respondent, John Moran, is the Director of the Department of Correction for the State of Rhode Island, which includes the ACI in Cranston.

The Petitioner in this action asserts two arguments: (1) that his right to effective assistance of counsel, guaranteed to him by the Sixth and Fourteenth Amendments of the United States Constitution, was denied, and (2) that his guilty plea was not voluntarily, intelligently and knowingly made.

Alfred Dufresne was indicted on November 19, 1976 for murder in the first-degree, for committing a violent crime with a firearm and for altering the serial numbers of the alleged murder weapon. The victim was the estranged wife of Petitioner Alfred Dufresne. Mrs. Dufresne had been shot to death in the early hours of November 6, 1976. The decedent's apartment was the scene of the shooting. On November 23, 1976, the Petitioner entered pleas of not guilty to all counts of the indictment.

At approximately 8:20 on the morning of November 6, 1976 Petitioner arrived at a bar located near Mrs. Dufresne's apartment. The bartender, Thomas Hathaway, testified that he served Mr. Dufresne two sixteen-ounce mugs of beer and two double shots of whiskey. The bartender described Mr. Dufresne as a habitual and heavy drinker, who appeared to have had something to drink prior to his arrival at the bar. After quickly consuming four shots of whiskey and a quart of beer Petitioner proceeded to the police station.

Upon his arrival at the police station, at approximately 8:40 A.M., Petitioner announced that he had just shot his wife and deposited a gun on the counter. The desk sergeant obtained the address from Petitioner and dispatched police and rescue units to the site. The Petitioner, hearing the rescue dispatch stated, "It's too late, I shot her three times." Members of the Providence Police force as well as a Medical Examiner responded to the scene of the shooting. Among the articles retrieved from Mrs. Dufresne's apartment was an open bottle of liquor. The bottle contained some liquid, and was described as either wine, peach brandy or whiskey. The bottle was taken to an office, in the police station.

Petitioner was placed in police custody following his opening statements at the station. Later in the day the police elicited more details of the shooting from Petitioner. Testimony from the police indicated that Petitioner did not slur his words, that there was no apparent odor of alcohol on his breath nor was there any indication that Petitioner was under the influence of any substance. Yet, police members indicated that due to Petitioner's condition they deemed it necessary to give Mr. Dufresne one shot of brandy.

Petitioner was admitted to St. Joseph's Hospital late on the night of his arrest. At approximately two o'clock, on the morning of November 7th, Mr. Dufresne was examined by a physician in the Emergency Room. The diagnosis of the examination was apparent alcohol abuse. The examining physician noted that his patient was "obviously inebriated." This intoxication was documented a full fifteen hours after Petitioner had been placed in police custody.

On April 6, 1977, Petitioner's case opened to a jury. The trial continued on April 7, 1977, April 11, 1977 and April 12, 1977. The State presented witnesses who testified to Mr. Dufresne's initial statement upon his arrival at the station. The Medical Examiner testified that he responded to the scene of the shooting and that there were three gunshot wounds to the victim's body. Testimony further indicated that the bullet retrieved from the victim's body matched the gun that Petitioner turned over to the police. Finally, police officers testified to Petitioner's remarks made later in the day of his arrest, while in custody at the station. Mr. Dufresne stated that he broke into the apartment and waited for his wife to return. When his wife returned she refused to talk to him and reached for the telephone. The Petitioner pulled the trigger, realized that the safety was on and removed the safety catch. He shot his wife in the face and while she was down on the floor shot her in the head.

No motions to suppress based on the voluntariness of Petitioner's confessions were made by trial counsel. No objections to the admissibility of the confessions based on voluntariness were ever entered. Counsel had neither obtained copies of Petitioner's complete statements before trial, nor reviewed the officers' handwritten notes of the confessions.

On April 12, 1977, following detailed recountings of Petitioner's confessions, and the shooting incident, Petitioner entered a plea of guilty to second-degree murder. The trial justice questioned the Defendant to determine whether his plea was knowingly and voluntarily given. The trial justice then accepted the Petitioner's plea of guilty.

Petitioner applied to the Superior Court for Post-Conviction Relief under R.I.Gen. Laws §§ 10–9.1–1—10–9.1–9. In the Superior Court proceedings, Petitioner maintained that he was denied the right to effective assistance of counsel and that his plea was not voluntarily made. An evidentiary hearing took place and the post-conviction hearing justice made the following enumerated factual determinations:

1. No pre-trial motions were filed in the case.

2. Counsel had not filed a motion to suppress incriminating statements elicited from the defendant, even though there was evidence from the defendant and others that he was highly intoxicated when admitted to the hospital from the police station. Further, he had been drinking before going to the police station and while at the police station.

3. That counsel had not interviewed witnesses who might have been called for the defendant.

4. That counsel was unable to fix the date of any interview with a State's witness, nor was he able to produce a written summary of any such interview.

5. That counsel's interview of witnesses was limited to a bartender, several police officers who were involved and personnel of the alcoholic section of the Institute of Mental Health.

6. That counsel did not confer with any expert in either ballistics or pathology in preparation of his case.

7. That counsel did not visit the crime scene.

8. That counsel conferred with the defendant personally on three or four occasions before trial for unspecified periods of time.

9. That counsel did not interview the man whom it is urged had left the decedent at her home shortly before the shooting nor did he discuss this individual with his client, even though counsel was aware of his name and address.

10. That counsel did not discuss drunkenness with the defendant as a defense or as an attack on the voluntariness of his confession, even though medical reports indicated he had been intoxicated.

11. That counsel did not move pursuant to Rhode Island statutory provisions for the production of statements of his client.

The post-conviction hearing justice concluded that Petitioner's trial counsel failed to confer frequently enough with his client and failed to properly investigate the facts concerning Petitioner's possible intoxication and its bearing on the voluntariness of statements he made to the police, or as it related to a substantive defense to the charge of murder. The Superior Court justice further noted that Petitioner's counsel failed to request or review notes of Petitioner's confessions, did not interview all available witnesses and neglected to interview the gentleman who had last been in the victim's company.

On May 8, 1980, the post-conviction hearing justice vacated Petitioner's plea of guilty, the original plea of not guilty was reinstated and a new trial was ordered. In granting Petitioner relief the Superior Court justice made three determinations. First, the court ruled that the Petitioner was denied his right to effective assistance of counsel. Second, the court found that Petitioner demonstrated the likelihood that the outcome of the trial was affected by the conduct of counsel and that the State did not demonstrate that such error was harmless. Finally, the Superior Court justice found that the conduct of counsel prior to the plea rendered incompetent any advice with respect to the plea.

The State appealed the ruling of the Superior Court justice to the Rhode Island Supreme Court. In its appeal, the State directly challenged the findings of the post-conviction hearing justice.

The Rhode Island Supreme Court focused its inquiry on the guilty plea entered by Mr. Dufresne. The Justices considered the fact that a plea had been entered to be the pivotal issue guiding their determination, *State v. Dufresne,* 436 A.2d 720, 722 (R.I. 1981). Relying on *Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), the Justices indicated that "The focus of a post-conviction inquiry when there has been a guilty plea is the nature of counsel's advice concerning the plea and the voluntariness of the plea. If the plea is validly entered, we do not consider any alleged prior constitutional infirmity." *Dufresne,* 436 A.2d at 722. In the Justices' view, the plea halted the trial and created a break in the chain of events; all further inquiry centered around the plea.

The validity of the guilty plea entered by Mr. Dufresne was considered the only pertinent issue before the court. The Justices categorically stated, "The sole question was whether Dufresne knowingly and voluntarily entered his plea. Our consideration of that plea, therefore, makes discussion of the trial counsel's activities that were not related to the taking of the plea wholly irrelevant." *Dufresne,* 436 A.2d at 722.

A two pronged examination, to determine the knowing and voluntary nature of Mr. Dufresne's guilty plea, was apparently undertaken by the Rhode Island Supreme Court. The court appeared to determine if, at the time of the plea's entry, Mr. Dufresne was acting in an intelligent and voluntary manner. The court then considered whether the advice Mr. Dufresne received from his attorney was within the range of advice that would be expected of reasonably competent counsel.

The entry of the plea itself was first examined by the Supreme Court Justices. The court ascertained that the trial justice had questioned Mr. Dufresne to determine whether his plea was knowingly and voluntarily given, *Dufresne*, 436 A.2d at 721. The Rhode Island Supreme Court determined that the examination by the trial justice comported with established constitutional practice and that the trial justice had expressly found the plea of guilty to be knowingly and voluntarily entered, *Dufresne*, 436 A.2d at 721.

The Supreme Court of Rhode Island next considered the advice of Mr. Dufresne's counsel at the time of the plea's entry. The Justices adopted the *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970), standard stating "A defendant who pleads guilty on the advice of counsel must demonstrate at his post-conviction hearing that the advice was not within the range of competence demanded of attorneys in criminal cases.", *Dufresne*, 436 A.2d at 723. The Justices examined the state of the evidence at the time that the plea was entered. The court concluded "The obvious reason for entering the plea was that the state's case was too strong . . ." *Dufresne*, 436 A.2d at 723. The Justices went on to state "Under *McMann, supra,* it is not our concern how that sum of evidence came to exist." *Dufresne*, 436 A.2d at 724. The court concluded, "The strength of the state's case . . . motivated the plea. The trial justice gave close attention to the defendant's plea and correctly determined its voluntariness. Counsel's advice to the defendant to plead guilty was therefore within the range of competence demanded of criminal attorneys." *Dufresne*, 436 A.2d at 724.

As a result of the foregoing analysis the Rhode Island Supreme Court reversed the decision of the post-conviction hearing justice and the judgment of conviction was reinstated. Mr. Dufresne immediately filed his Petition for a Writ of Habeas Corpus with this Court.

■ At the outset, this Court must determine whether Petitioner Dufresne has ful-filled the exhaustion requirements of 28 U.S.C. § 2254(b) and (c). The Supreme Court has made clear "that 28 U.S.C. § 2254 requires a federal habeas petitioner to provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim." *Anderson v. Harless,* —— U.S. ——, ——, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982), *quoting Picard v. Connor,* 404 U.S. 270, 276–77, 92 S.Ct. 509, 512–13, 30 L.Ed.2d 438 (1971). In addition, the Court stated, "the habeas petitioner must have 'fairly presented' to the state court the 'substance' of his federal habeas claim" *Anderson,* 103 S.Ct. at 277, *quoting Picard,* 404 U.S. at 275, 277–78, 92 S.Ct. at 512, 513–14. The exhaustion requirement mandates that a petitioner provide the state court with all of the facts supporting a constitutional claim and also submit the same governing legal arguments that petitioner would make in the District Court, *Williams v. Holbrook,* 691 F.2d 3, 6 (1st Cir.1982). Exhaustion, however, requires only that petitioner's federal claims be first presented to the state courts so as to give them an opportunity to consider the constitutional issues; it does not require that the state courts either address or decide the federal issues, *Williams,* 691 F.2d at 8.

■ All of the facts supporting Petitioner's constitutional claim as well as the same governing legal arguments have been asserted in the Rhode Island state courts by Mr. Dufresne. Throughout his post-conviction hearings and appeals Petitioner has maintained that he was denied the right to effective assistance of counsel, up to and including the time his guilty plea was entered. Petitioner has continually asserted that due to the denial of counsel he did not voluntarily relinquish known rights when he entered his guilty plea. Petitioner has fairly presented the substance of his federal habeas claim to both the Rhode Island Superior and Supreme Court. Mr. Dufresne has given the Rhode Island courts the opportunity to consider all of his constitutional issues; the principles of comity and the

requirement of exhaustion of state remedies have been fulfilled.

Deference, however, must be paid to the factual determinations of the state courts in Mr. Dufresne's prior post-conviction proceedings. The requirements of 28 U.S.C. § 2254(d) indicate that the factual findings of a state court deduced after a hearing and reduced to writing shall be given a presumption of correctness.[1] The Supreme Court has recently made clear that § 2254(d) applies to all state courts, including appellate courts which have made pertinent factual findings following post-conviction hearings. *Sumner v. Mata*, 449 U.S. 539, 546–47, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981).

The Superior Court post-conviction hearing justice, following lengthy hearings conducted with the police and trial counsel, made extensive written factual determinations. The Superior Court justice had found as a fact that trial counsel did not recognize and appreciate that intoxication was either a potential defense to murder in the first-degree or was material to the issue of voluntariness of a waiver of the constitutional right against self-incrimination. The justice based this conclusion on the testimony presented and from his observation of the attorney when cross-examined.

Deference must be paid to the factual determinations of the justice who had the opportunity to witness the demeanor of trial counsel under cross-examination, especially since such observation contributed to his findings. The post-conviction hearing justice made a routine credibility determination and found, trial counsel's assertions notwithstanding, that counsel failed to recognize or appreciate the significance of his client's intoxication. That finding, based on a determination of credibility, cannot now be attacked. *See Palmigiano v. Houle*, 618 F.2d 877, 882 (1st Cir.1980), *cert. denied* 449 U.S. 901, 101 S.Ct. 272, 66 L.Ed.2d 132

(1980). *See also Marshall v. Lonberger*, —— U.S. ——, ——, 103 S.Ct. 843, 851, 74 L.Ed.2d 646 (1983). The determinations of the Superior Court justice on the issue of intoxication are indeed fairly supported by the record as a whole. The record indicated: Prior to proceeding to the police station a bartender, who observed that Petitioner had already had something to drink, served Petitioner two double shots and two sixteen-ounce beers; the Providence Police deemed it necessary to give Petitioner a shot of brandy at the station; and Petitioner was intoxicated fifteen hours later when admitted to St. Joseph's Hospital on the same evening. All of these facts would weigh against a voluntary waiver of Petitioner's right against self-incrimination.

■ The opinion of the Rhode Island Superior Court post-conviction hearing justice provides a complete set of factual determinations. Since the entire focus of the analysis of the Rhode Island Supreme Court differed from that of the Superior Court justice, the factual determinations were not considered by the Supreme Court. An extensive review of the entire record indicates that the findings of fact made by the Superior Court justice are fairly supported by the record. Therefore, the factual determinations made by the Rhode Island Superior Court justice will form the framework upon which the analysis of Mr. Dufresne's Petition will be built.

The pertinent inquiry in evaluating a claim of ineffective assistance of counsel where a guilty plea has been entered, Respondent asserts, concerns the quality of the advice to plead guilty. Respondent, like the Rhode Island Supreme Court, claims that *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), mandates this limited focus. Respondent cites *McMann* for the proposition that:

---

1. Title 28 U.S.C. § 2254(d) provides, in part:
 (d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue,

made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct,

A plea of guilty in state court is not subject to collateral attack in a federal court on the ground that it was motivated by a coerced confession unless the defendant was incompetently advised by his attorney. *McMann* 397 U.S. at 772, 90 S.Ct. at 1449.

Respondent and the Rhode Island Supreme Court thus maintain that in examining the assistance rendered by counsel it is not appropriate to look beyond the competence of the advice to enter a guilty plea.

It is asserted that Petitioner's trial counsel rendered reasonably competent assistance in advising him to plead. Respondent argues that solely through trial counsel's efforts were the prosecutor and trial judge persuaded to consider a plea to second-degree murder. Trial counsel was also credited by Respondent with negotiating terms which decreased the amount of time Petitioner had to serve prior to parole eligibility; avoiding the special classification of a "lifer" which would have arisen from a conviction of first-degree murder. Finally, Respondent claims that the state had presented a compelling case against Mr. Dufresne. This assertion parallels the opinion of the Rhode Island Supreme Court which concluded that the state of the evidence at the time of the plea clearly warranted a plea to a reduced charge of second-degree murder, *Dufresne*, 436 A.2d at 724. Therefore, Respondent concludes, trial counsel's advice to plead and the plea bargaining itself comported with acceptable standards of reasonably effective assistance of counsel.

The reasoning of both the Rhode Island Supreme Court and the Respondent create an incongruous result. A defense counsel, through various failures, errors and omissions of representation, may leave his client with little option but to enter a guilty plea; but the history of counsel's assistance is to be forever sealed. Routine inquiry or examination by the trial justice at the time of the plea will repel an assault based on voluntariness. Without counsel functioning as an effective adversary the state may build a prison around a defendant; a re-viewing court, however, is precluded from examining how the bricks of evidence were formed or cemented into place. Review of constitutional rights and guarantees along that route to prison is to be halted at the barrier of the guilty plea. The guilty plea becomes an opaque roadblock, beyond which no court may view to investigate prior claimed constitutional violations. Compelling as the evidence of guilt might be, however, the Defendant is still constitutionally entitled to require the State to prove his guilt. He is guilty only after a complete trial, not before.

The reliance on *McMann* and *Tollett* in fashioning a guilty plea as an impenetrable barrier to review is misplaced. *McMann* itself makes clear that when entering a guilty plea a defendant is entitled to the effective assistance of counsel. The court stated:

> Whether a plea of guilty is unintelligent and therefore vulnerable when motivated by a confession erroneously thought admissible in evidence depends as an initial matter, not on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorney's in criminal cases. *McMann*, 397 U.S. at 770–71, 90 S.Ct. at 1448–49.

The Court went on to point out that a defendant "is bound by his plea and his conviction unless he can allege and prove serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act." *McMann*, 397 U.S. at 774, 90 S.Ct. at 1450. *McMann* thus suggests that the history of counsel's representation should be explored to prove "serious derelictions on the part of counsel." *Tollett* provided that a defendant "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*." *Tollett*, 411 U.S. at 267, 93 S.Ct. at 1608. *Tollett* also held:

> Counsel's failure to evaluate properly facts giving rise to a constitutional claim

or his failure to properly inform himself of facts that would have shown the existence of a constitutional claim might in particular fact situations meet this standard of proof. Thus, while claims of prior constitutional deprivation may play a part in evaluating the advice rendered by counsel, they are not themselves independent grounds for federal collateral relief. *Tollett,* 411 U.S. at 266–67, 93 S.Ct. at 1607–08.

Therefore, *Tollett* also provides a basis for looking beyond a guilty plea to investigate alleged failures or omissions of counsel which cumulatively would undermine the competence of the plea advice given to a defendant.

■ The decisions in *McMann* and *Tollett* stand for the proposition that a guilty plea is subject to attack based on claims of ineffective assistance of counsel. The Supreme Court, in *Cuyler v. Sullivan,* 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980), has stated:

> Our decisions make clear that inadequate assistance does not satisfy the Sixth Amendment right to counsel made applicable to the States through the Fourteenth Amendment. A guilty plea is open to attack on the ground that counsel did not provide the defendant with "reasonably competent advice." *McMann v. Richardson,* 397 U.S. 759, 770–771 [90 S.Ct. 1441, 1448–1449, 25 L.Ed.2d 763 (1970); *see Tollett v. Henderson,* 411 U.S. 258, 267 [93 S.Ct. 1602, 1608, 36 L.Ed.2d 235] (1973).

*McMann v. Richardson* was one of three cases, including *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) and *Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970), which are commonly referred to as a cohesive group. The Eighth Circuit summarized the interpretation of these cases:

> One common thread running throughout the *Brady* trilogy and *Tollett* is that a guilty plea is not subject to attack *unless*

it was made without reasonably effective assistance of counsel, or was otherwise involuntarily or unintelligently entered. *Brady v. United States,* 397 U.S. at 754–756 [90 S.Ct. at 1472–1473], *McMann v. Richardson,* 397 U.S. at 770–771 [90 S.Ct. at 1448–1449], *Parker v. North Carolina,* 397 U.S. at 797–798 [90 S.Ct. at 1462–1463]; *Tollett v. Henderson,* 411 U.S. at 266–268 [93 S.Ct. at 1607–1609].

*Ford v. Parratt,* 638 F.2d 1115, 1119 (8 Cir.1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 173, 74 L.Ed.2d 142 (1982).

■ It is entirely appropriate and, in fact, necessary in this action to look beyond the guilty plea to determine if effective assistance of counsel has been rendered. *See Hawkman v. Parratt,* 661 F.2d 1161, 1168–1171 (8th Cir.1981), *Via v. Superintendent, Powhatan Correctional Center,* 643 F.2d 167, 174–175 (4th Cir.1981), *Morrow v. Parratt,* 574 F.2d 411, 413–414 (8th Cir. 1978), *Walker v. Caldwell,* 476 F.2d 213, 221–224 (5th Cir.1973). In *Cepulonis v. Ponte,* 699 F.2d 573 (1st Cir.1983), a habeas action following the entry of a guilty plea, the First Circuit examined the facts and circumstances of the case to determine if the Petitioner had been denied effective assistance of counsel.[2] While denying relief the Court in *Cepulonis* nevertheless clearly recognized that where a defendant seeks federal relief from a conviction based on a guilty plea it is appropriate to look beyond the circumstances of the plea itself. In this action, the guilty plea was entered after the admission of Petitioner's confessions, following the failure of defense counsel to press constitutional objections.

■ The First Circuit has delineated the constitutionally required level of assistance of counsel in criminal cases. In *Cepulonis* the Court stated:

> We therefore conclude that the standard of *United States v. Bosch,* 584 F.2d 1113, 1119 (1st Cir.1978) governs claims of ineffective assistance of counsel in all habeas

---

2. This opinion was obviously filed after the 1981 opinion of the Rhode Island Supreme Court considered in this action and, hence, was not available to the Rhode Island Supreme Court at the time it filed its Opinion.

petitions in this circuit, whether the underlying convictions are state or federal.

Under *Bosch,* a criminal defendant is entitled to "reasonably competent assistance" from counsel at each stage of the proceedings, including pretrial preparation and investigation. *United States· v. Garcia,* 698 F.2d 31, 35 (1st Cir.1983). *Cepulonis,* 699 F.2d at 575. *See also United States v. Fusaro,* 708 F.2d 17 at 26–27 (1st Cir.1983). In order to establish constitutionally deficient representation under the reasonably competent attorney standard, a defendant also "must allege and demonstrate that his counsel's error clearly 'resulted from neglect or ignorance rather than from informed, professional deliberation'." *Bosch,* 584 F.2d at 1121.

Comprehensive pre-trial investigation has long been considered an essential component in providing a defendant with effective assistance of counsel. As the Eighth Circuit has stated: "Ordinarily a reasonably competent attorney will conduct an in-depth investigation of the case . . . ." *Benson v. United States,* 552 F.2d 223, 225 (8th Cir.1977), *cert. denied* 434 U.S. 851, 98 S.Ct. 164, 54 L.Ed.2d 120 (1977). The Fifth Circuit concurs:

> We have often said that a defense attorney must be prepared to investigate and develop evidence on behalf of his client. "It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to guilt and to a degree of guilt or penalty." American Bar Association Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function and the Defense Function § 4.1 (tent. draft 1970). An attorney does not provide effective assistance if he fails to investigate sources of evidence which may be helpful to the defense. (citations omitted).

*Davis v. Alabama,* 596 F.2d 1214, 1217 (5th Cir.1979), *vacated as moot,* 446 U.S. 903, 100 S.Ct. 1827, 64 L.Ed.2d 256 (1980). Courts have considered counsel to have a duty to "conduct an in-depth investigation of the case which includes an independent inter-

viewing of witnesses." *Ford,* 638 F.2d at 1117. Failure to interview potential witnesses, thus, often provides the basis for granting federal relief. *See Thomas v. Wyrick,* 535 F.2d 407, 413 (8th Cir.1976), *cert. denied* 429 U.S. 868, 97 S.Ct. 178, 50 L.Ed.2d 148 (1976), *McQueen v. Swenson,* 498 F.2d 207, 216 (8th Cir.1974). Additionally, failure to adequately consult with a defendant has contributed to findings of ineffective assistance of counsel by reviewing courts. *See Walker v. Caldwell,* 476 F.2d 213, 215 (5th Cir.1973), *Morrow v. Parratt,* 574 F.2d 411, 413 (8th Cir.1978). A criminal defendant is entitled to competent pre-trial investigation and preparation of his case.

Petitioner did not receive reasonably competent assistance from his counsel in the pre-trial preparation and investigation of his case. In a first-degree murder case, which proceeded to trial, the record should reveal a thoughtful and thorough pre-trial investigation. In fact, the record is replete with omissions on the part of trial counsel.

Counsel met infrequently with his client. The record indicates three to four meetings taking place and counsel could not even specify the durations of those meetings. Trial counsel did not discuss potential witnesses with his client, or explore possible defenses with him. Counsel did not discuss drinking or drunkenness with Petitioner at any time while preparing the case.

Trial counsel failed to interview available witnesses. Counsel was unable to fix the date of any interview with a witness for the state. The limit of interviewing done by trial counsel was with a bartender, personnel of the alcoholic section of the Institute of Mental Health and several police officers that were involved in the case. Counsel neglected to interview potential witnesses who would be essential to potential trial strategies. Counsel possessed the name and address of the gentleman who allegedly left Mrs. Dufresne at her home shortly before the shooting, after an all night date. At no time, however, did counsel make any effort to interview ·that individual. Further, the scene of the crime was never visited. The

foregoing omissions might be excused, however, on the basis that there was little hope of controverting the factual framework of the charge.

Virtually no independent pre-trial investigation or discovery was pursued prior to trial. Rhode Island statutory discovery provisions were not invoked to obtain the confessions given by his client to the police. Counsel failed to request or review the handwritten notes made of Petitioner's confessions. As the foremost failure, counsel neglected to properly investigate the facts concerning Petitioner's probable and documented intoxication.

█ Trial counsel was obligated to investigate intoxication as a defense in Petitioner's case. A weak defense may not be used at trial for strategic reasons. Failure to investigate a possible defense, however, cannot be excused as a trial tactic. A "failure to investigate cannot be excused by saying that it did not seem to be a very strong defense." *Davis,* 596 F.2d at 1218.

█ Counsel failed to recognize or appreciate that intoxication was either a potential defense to murder in the first-degree or was material to the issue of the voluntariness of Petitioner's confessions. Investigation would have revealed that Petitioner was highly intoxicated when admitted to the hospital from the police station late in the night, after he had been in the custody of police from the early morning. Evidence also established that Mr. Dufresne had been drinking before going to the police station and continued to do so while in police custody. Yet no motions to suppress the incriminating statements elicited from the Petitioner were ever filed. During the course of trial *voir dire* hearings were conducted concerning the admissibility of Petitioner's confessions. At no time did counsel even then suggest that the condition of Petitioner would militate against the admissibility of the statements. Evidence existed which would indicate that Petitioner may have been drinking before the shooting took place. In fact, an open bottle of liquor was found at the scene of the crime, where Petitioner had spent the night.

█ The record demonstrates that the assistance Petitioner's trial counsel provided was inadequate. Counsel embarked Petitioner on a first-degree murder trial with no real background investigation conducted or trial preparation undertaken. The State, being in essence unopposed, compiled a strong case against Petitioner. With no cohesive defense prepared, and his fate virtually certain, Petitioner sought the least serious penalty. A guilty plea was entered.

Petitioner was denied his right to effective assistance of counsel. Mr. Dufresne did not receive reasonably competent assistance from his counsel at all stages of the proceedings. Due to the omissions in the preparation and investigation of Mr. Dufresne's case Petitioner's guilty plea was not knowingly, voluntarily and intelligently made.

In the First Circuit it appears that a showing of prejudice to Mr. Dufresne is required before a Writ of Habeas Corpus may be granted. On at least one occasion the First Circuit has declined to grant habeas relief, in part, because there had been no showing of prejudice. *United States v. Ritch,* 583 F.2d 1179, 1183 (1st Cir.1978) *cert. denied,* 439 U.S. 970, 99 S.Ct. 463, 58 L.Ed.2d 430 (1978). While a showing of prejudice may be required, it is unclear what kind or degree of prejudice a petitioner must show before he may obtain federal habeas relief due to ineffective assistance of counsel. The First Circuit recently stated: "In view of our conclusion on the effectiveness of counsel, however, we need not determine today whether the denial of effective assistance can ever be deemed 'harmless,' and if so which party has the burden of proof on the issue." *Cepulonis,* 699 F.2d at 576, n. 4. The court, however, cited with apparent approval, the prejudice analysis undertaken by the Fifth Circuit in *Davis v. Alabama, Cepulonis.* 699 F.2d at 576, n. 4. This is an instance, as recognized by the Fifth Circuit in *Davis,* where it is not appropriate to require Petitioner to show, specifically, how he was injured by the delinquency of his attorney. In light of the

number and quality of counsel's omissions prejudice may be presumed.

The Supreme Court has recognized that not every defendant whose attorney was deficient must show prejudice. The Court has said that "the right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice resulting from its denial," *Glasser v. United States,* 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942). If a defense attorney were to put on what amounted to no defense at all, the Supreme Court would "not stop to determine whether prejudice resulted," *Hamilton v. Alabama,* 368 U.S. 52, 55, 82 S.Ct. 157, 159, 7 L.Ed.2d 114 (1961). The possibility of presenting a defense on behalf of Petitioner Dufresne had been foreclosed by counsel's failure to conduct pretrial investigations or undertake trial preparation. While it is apparent that Petitioner's defense was prejudiced by trial counsel's conduct, the exact measure of that prejudice need not be determined by this Court.

 Petitioner has been denied his right to effective assistance of counsel. The guilty plea entered by Petitioner was neither knowingly, intentionally or voluntarily made. Trial counsel's failure to investigate possible defenses was prejudicial. The failures and omissions of trial counsel are so pervasive that prejudice to Petitioner's defense may be presumed. Accordingly, a Writ of Habeas Corpus discharging Petitioner is granted, subject to the right of the State of Rhode Island, if it wishes to do so, to try him on the indictment here involved within one hundred and twenty days of the filing of this Opinion.