232 A.2d 365.

RAYMOND LAROCHE *vs.* HAROLD V. LANGLOIS, JR., *Warden.*

JULY 31, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

POWERS, J. This petition for habeas corpus seeks to vacate sentences imposed by a superior court justice on the petitioner's pleas of guilty to two indictments for the offense of forging and uttering. The prayer for relief is predicated on the petitioner's sworn statements that he neither understood nor was advised of the legal consequences of a guilty plea and that he involuntarily entered the pleas because of circumstances constituting coercion.

In connection with the proceedings before us, there have been certified to this court transcripts of four relevant proceedings in the superior court, from which transcripts we have made the factual determinations on which our decision rests. We have taken the statements made by all parties in the superior court proceedings to be accurately reported and petitioner makes no contention to the contrary. See *United States ex rel. McGrath* v. *LaVallee,* 319 F.2d 308.

It appears from these records that on April 7, 1965, petitioner was arraigned in the superior court on two indictments for forging and uttering and on an indictment for robbery for which he had been jointly indicted with one Robert E. Duffy. The petitioner pleaded not guilty to each of the three indictments and was remanded to the adult correctional institutions where he was then serving a one-year sentence for another offense.

It further appears that, petitioner being without means, a member of the public defender's staff was appointed to represent him. On June 8, 1965, petitioner and his counsel were in the superior court, apparently ready for trial on the robbery indictment that day, when, for the first time, peti-

tioner indicated to counsel that he was guilty of the offense charged.

It is apparent from counsel's testimony[1] in a habeas proceeding held in the superior court February 23, 1966, that because of petitioner's concern over the prospects of the sentence which would be imposed if he were convicted of robbery, and acting with petitioner's consent, counsel conferred with the superior court justice and the assistant attorney general assigned as prosecutor on the indictment for robbery. Following this conference, petitioner was permitted to withdraw his not guilty pleas to the three indictments, pleaded guilty to each of them, and was remanded to the adult correctional institutions to await sentencing pending receipt of the superior court justice of a presentence report.

On June 29, 1965, petitioner, accompanied by the assistant public defender, appeared for sentence before the superior court justice who had permitted him to change his pleas on June 8, 1965. However, counsel then advised the court that petitioner wished to retract his guilty pleas and have the not guilty pleas reinstated. The transcript of this proceeding discloses that petitioner was motivated in changing his mind by the knowledge that he would be sentenced to three years on one of the indictments for forging and uttering, and that his wife would divorce him if he received a sentence for as much as three years.

From all the records before us, and petitioner acknowledges the correctness thereof, it is established that as a result of the June 8, 1965, conference, the superior court justice concluded that, subject to confirmation of the material facts by the presentence report, a suspended sentence of seven years with ten years' probation on the robbery

---

[1]We deem it advisable to note that in the February 23, 1966, habeas proceeding, petitioner expressly waived the attorney-and-client privilege with regard to the assistant public defender who had represented him in the June proceedings of 1965.

indictment, a deferred sentence on one of the forging and uttering indictments and a three-year sentence on the other indictment for forging and uttering, would do justice between petitioner and society.

When, at the June 29, 1965, arraignment, the superior court justice agreed to permit petitioner to again change his pleas, this time from guilty to not guilty, the assistant attorney general stated that the charge for robbery would go to trial the following day. Thereupon petitioner stated, "I'll plead guilty. I'm not going to go all through this." The assistant public defender however then asked that the matter be continued to the following day, indicating that petitioner should have time to weigh all the consequences of his ultimate decision and make a calm determination. The superior court justice agreed and continued the matter as requested.

The following day, June 30, 1965, petitioner again appeared with counsel who advised the court that petitioner had been torn by conflicting advice from fellow inmates, prison guards and members of his family which resulted in his confusion of the previous day, but after careful consideration was now convinced that his interests would be best served by pleading guilty to the three indictments. Counsel stated categorically that petitioner's first reason for his pleas of guilty was that such was the fact adding,

> "So, at this time, for the sake of the record, and I also wish the court would find out from the defendant as well, I wish to retract the plea of not guilty and once and for all finally admit the allegations to be true by pleading guilty to each of the three pending indictments, namely, Indictment 33593, 94, and 95, and it goes without saying that the defendant has been apprised of all his rights, the meaning of the plea of guilty, and the necessary waivers of a trial and of an appeal, and this is his considered and weighted decision after much reflection."

The superior court justice then asked, "Did you have

anything you wanted to add to that, Mr. LaRoche?" The petitioner replied, "Your Honor, I was pretty well confused yesterday, and I just want to say I'm sorry I caused any trouble."

The superior court justice accepted guilty pleas on each of the three indictments and imposed the sentences previously made known to petitioner as the dispositions that he might expect. Before doing so, however, he questioned and advised petitioner extensively. The details thereof will be set forth hereafter at a more appropriate juncture.

Subsequently, on February 15, 1966, petitioner filed a habeas corpus petition in the superior court for a review of the sentences imposed following the pleas of guilty to the forging and uttering indictments averring the illegality of such sentences on the grounds of duress and inadequate representation by counsel. A hearing was held thereon February 23, 1966, as aforesaid, at which petitioner and his former counsel, the assistant public defender, both testified. It was heard by a superior court justice other than the sentencing justice and resulted in the petition being denied. The transcript compiled at that hearing is fairly extensive, and the petitioner's testimony as it appears therein when contrasted with the reported proceedings in the transcripts for June 29 and 30, respectively, is persuasive to us of the correctness of our judgment in the instant proceedings. The burden of establishing the truth of the averments in his petition is on petitioner, *Cole* v. *Langlois,* 99 R. I. 138, 206 A.2d 216, and, in the circumstances of the instant cause, that burden is largely a question of petitioner's credibility.

Having been denied relief in the superior court, petitioner was granted leave to file the instant petition in this court and did so on September 20, 1966. Parenthetically, we note that at the hearing in the superior court as well as at the hearing before us on the instant petition, petitioner was represented by able counsel appointed by the court after it appeared that by the nature of his contention of inadequate

representation, continuing representation for petitioner by the public defender's department would have created an anomalous situation. It should be further noted, moreover, that different counsel were assigned in each of the habeas proceedings out of an abundance of concern for petitioner's peace of mind.

In support of the sworn averments in his petition on the strength of which the writ issued out of this court, petitioner makes three contentions. We shall consider them seriatim.

He first contends that he is being illegally restrained of his liberty on the ground that his pleas to the three indictments were not made voluntarily and do not constitute the intelligent relinquishment of a known right as laid down in *Cole* v. *Langlois, supra, Fay* v. *Noia,* 372 U. S. 391, 83 S. Ct. 822, *Johnson* v. *Zerbst,* 304 U. S. 458, 58 S. Ct. 1019, and *Jones* v. *State,* 221 Md. 141, 156 A.2d 421.

This contention is predicated on the proposition that the transcripts of the June 29 and 30, 1965, hearings establish that petitioner was so confused, emotionally disturbed and ignorant of the fact that he was waiving his right to trials and to appeals, that the pleas were not made voluntarily. We are in full accord with the principles enunciated in the cases relied upon when related to such circumstances as those petitioner insists existed when he entered his pleas of guilty, but we do not agree that the transcripts establish the circumstances for which he contends.

Whatever his state of mind may have been when arraigned for sentencing on June 29, 1965, it is clear from the transcript for the following day that petitioner was fully cognizant of all his rights when he entered his final pleas of guilty. As heretofore related, his then counsel stated to the court that petitioner wished to plead guilty on all three pleas for the principal reason that he was guilty of the offenses charged in the three indictments. Continuing,

counsel stated to the court that he had advised petitioner that his pleas amounted to a waiver of jury trials and of any right of appeal. He then asked the court to make independent inquiry of petitioner. The court did so, stating, "I want to be absolutely certain that you understand what you are doing, and you're going to have to convince me beyond a reasonable doubt that you do understand what you are doing today * * *."

He put a series of questions to petitioner relative to the latter's understanding of the nature of his pleas. To each question petitioner replied that he did understand. We can give no credence to his present contention to the contrary.

In the superior court hearing on habeas proceedings he freely admitted that he was guilty of the robbery charge. In the course of that offense he had applied force by assaulting the victim with a razor. He readily acknowledged that he could not escape conviction of an offense which carried a sentence of from five years to life.

Further, in the superior court habeas proceeding, he testified with almost total recall as to the remarks of the sentencing justice relative to his conduct in the robbery offense being out of character with his record for past offenses. His recollection however of what had been told to him on June 30, 1965, as to his rights and the legal effects of guilty pleas is faulty to say the least. We think, contrary to petitioner's assertions, that the transcripts clearly demonstrate that petitioner made a knowing and intelligent choice of the alternatives available to him.

In *Commonwealth ex rel. Kerekes* v. *Maroney*, 423 Pa. 337, 223 A.2d 699, it was held that where it appears that petitioner's plea of guilty was entered voluntarily, but motivated by a desire to obtain a more favorable disposition, the fact of such motivation did not vitiate the guilty plea. We have a conviction amounting to a moral certainty, from a careful reading of all the transcripts, that petitioner in-

telligently relinquished his rights to trials and appeals in the interest of avoiding certain conviction on the robbery charge with its attendant sentence, exceeding as it must the sentence imposed on his plea of guilty of forging and uttering.

The petitioner's second contention turns squarely on the question of whether he is to be believed. It is, that his pleas of guilty to the forging and uttering indictments were not made voluntarily but were entered under duress. From the transcript of the habeas hearing in the superior court, it is apparent that petitioner made the same contention at that hearing as he makes before us. Our determination as to its merits, however, results from our independent evaluation of the circumstances to which petitioner refers and from the weight we give to his reported testimony as to how such circumstances influenced him.

The transcript of the proceedings for June 29, 1965, discloses that when petitioner announced that he wished to have his not guilty pleas reinstated and the superior court justice consented, the assistant attorney general stated that trial on the robbery charge would commence the following day. At this point petitioner's then counsel stated that he would not be available, and petitioner objected to going to trial with different counsel.

The superior court justice, who would have tried the case the following day, indicated that if trial were continued to late September or October some other justice would preside. Commenting on this, the superior court justice stated, petitioner stresses, "* * * I don't think the judge who hears it is going to pin a good conduct medal on him." Thus, petitioner argues that his being caught in a bind, as it were, between going to trial the following day with different counsel or continuing the trial to a fall term, when some other superior court justice would be sitting, amounted to coercion.

The argument as made contains the subtle suggestion that going to trial the following day was a ploy used by the assistant attorney general in the nature of a threat and that the quoted comment of the superior court justice was designed to suggest dire consequences if petitioner persisted in not guilty pleas.

These suggestions are achieved by lifting portions of the transcript out of context. A full reading discloses, however, that the state was going to trial with petitioner's co-defendant Duffy on the following day and it was for this reason that the assistant attorney general stated that petitioner would go to trial at the same time. On the other hand, the superior court justice's comment was made in connection with petitioner's position if, considering petitioner's objection to going to trial the following day, trial on the robbery charge were continued to the fall. It should be borne in mind that not even petitioner could imagine an acquittal.

However, petitioner argues that in the circumstances prevailing, he was coerced into entering guilty pleas to the forging and uttering charges and this for the reason that it was made clear to him that he would not receive the lenient disposition of the robbery charge unless he pleaded guilty to the other indictments. Such leniency being contingent on his accepting a three-year sentence on one of the forging and uttering charges, his guilty pleas to the latter charges were, he contends, obtained by duress because he had consistently maintained that he was innocent of the less serious charges. This matter of unwaivering protestations of innocence as to the offenses of forging and uttering, however, is disclosed by the record not to be so conclusively and favorably determinative as petitioner would lead us to believe.

He made no such protestation to the superior court justice who sentenced him. Rather, he waited until a suspended sentence on the robbery charge had been imposed

and then sought post-conviction relief as to the other charges by petitioning for habeas corpus in the superior court. Not until then did he make this an issue. He testified before the superior court justice at the February 23, 1966, hearing that he had repeatedly insisted to the assistant public defender that he was innocent of the forging and uttering charges and, in effect, was advised to forget that and take advantage of what he referred to as a "package deal."

Explaining his silence on the question before the superior court justice who imposed the sentences, he further testified at the February 23, 1966, hearing that on the morning of June 30, 1965, his then counsel informed him that the superior court justice was so angered over petitioner's conduct of the previous day that, unless petitioner pleaded guilty to all three charges he would be sentenced to ten years on the charge for robbery. Although not asserted in express terms, petitioner would have us infer that if he insisted on pleading not guilty and going to trial on the indictments for forging and uttering while pleading guilty to the charge of robbery, the superior court justice would have accepted these pleas, but in a spirit of vindictiveness would have sentenced petitioner to ten years on the robbery charge. He stated categorically that counsel told him that a ten-year sentence was the judge's idea.

As previously recorded, the assistant public defender who represented him also testified, but his version is significantly different. He testified to a conference with petitioner on the morning of June 30, but stated that he informed petitioner that the attorney general would recommend a ten-year sentence on the robbery charge if petitioner were convicted of that offense, either on his plea or after trial. According to his testimony the attitude of the superior court justice was not mentioned and indeed it would appear that it was not known to petitioner's counsel what the attitude of the superior court justice would be.

It seems clear to us, however, from the exhaustive comments of the sentencing justice as they appear in the transcripts for the two days in question, and from the nature of his comments and inquiries, that he was sincerely concerned about petitioner and desirous of giving him the best possible opportunity for rehabilitation. In the light of the record on which we make this determination, we are unable to believe that petitioner entertained a conviction to the contrary. Indeed, when on June 30 it became apparent that petitioner was determined to plead guilty to all charges, the assistant attorney general stated that if the court accepted petitioner's guilty plea to robbery the state was insisting on the imposition of a seven-year sentence without suspension. The court reminded counsel for the state that responsibility for sentencing was his and that he would impose the suspended sentence because he believed it to be just.

On the question of petitioner's continuing and unfaltering assertions of innocence of the charges of forging and uttering, the assistant public defender testified that after petitioner had admitted his guilt in connection with the indictment for robbery and counsel inquired as to the other charges, petitioner replied, "I can beat that rap." The petitioner denies having used the expression but, from his carefully couched responses where caution was indicated and total recall of that which established the truth of such details as dates, time and names, contrasted with his failure to remember those matters which undermined his position, we are constrained to conclude that he at no time, prior to the February 23, 1966, hearing claimed to be innocent of the forging and uttering charges.

Rather, we think that without admitting guilt, petitioner never led his counsel to believe other than that the state would be hard put to prove the charges of forging and uttering. We are persuaded that as to his contention of coercion in connection with those charges, petitioner took

the calculated risk of accepting the advantages inuring in his plea of guilty to the robbery charge and, later by means of post-conviction remedies, he would hopefully have vacated sentences on charges he was optimistic the state could not prove beyond a reasonable doubt.

The petitioner's remaining contention requires little discussion for the reason that the thrust thereof turns on a favorable determination of either of his first two contentions. This third and final contention is that there was no intelligent voluntary waiver of petitioner's rights to jury trials and appeals from convictions when he pleaded guilty to the two indictments charging him with forging and uttering. In support of this contention petitioner again argues, relying on his construction of what the records show, either that he did not know the legal effect of a guilty plea or was coerced by reason of the circumstances with which he was confronted.

These arguments we have examined in detail and rejected. Our decision has not been reached without a painstaking examination of all the transcripts and an independent evaluation of what they disclose, constantly keeping in mind the conclusions that petitioner has attempted to draw therefrom. Anything less would constitute a denial to petitioner of the due process guaranteed by the constitution of the United States and of this state.

Even so, we are unable to escape the persuasive force of petitioner's response to the circumstances prevailing when he entered pleas of guilty to the three charges on June 30, 1965. In the presence of the superior court justice who, the record shows, demonstrated and maintained a deep concern for petitioner over the objections of the prosecution, petitioner listened to his counsel inform the court that petitioner wished to enter guilty pleas for the reason that he was guilty of the three charges and would do so knowing that he was waiving his rights to jury trials and

appellate review if convicted. He listened to counsel's concluding remarks requesting the superior court justice to make independent inquiry of petitioner and to the court's inquiries he repeatedly stated that he understood fully.

When questioned about this at the February 23, 1966, hearing in the superior court he stated categorically that he had not been properly advised. This of course was at a time when an advantageous disposition of the robbery charge was safely behind him. Significantly, on that date, when queried about this, the petitioner replied, "The two forgery charges I want a trial. [sic]"

The petition for habeas corpus is denied and dismissed, the writ heretofore issued is quashed, the records certified are ordered returned to the superior court, and the petitioner is remanded to the custody of the respondent warden.

*Abedon, Michaelson, Stanzler, & Biener, Milton Stanzler,* of counsel, for petitioner.

*Herbert F. DeSimone,* Attorney General, *Donald P. Ryan,* Special Assistant Attorney General, for respondent.