STATE

v.

**Alfred DUFRESNE.**

No. 80–455–C.A.

Supreme Court of Rhode Island.

Oct. 28, 1981.

Dennis J. Roberts, II, Atty. Gen., Alyssa L. Talanker, Sp. Asst. Atty. Gen., for plaintiff.

John F. Cicilline, Providence, for defendant.

OPINION

SHEA, Justice.

The defendant, Alfred A. Dufresne, was granted a new trial by a justice of the Superior Court. The justice so ruled after a hearing on the defendant's petition for postconviction relief pursuant to G.L.1956 (1969 Reenactment) §§ 10–9.1–1—10–9.1–9, as enacted by P.L.1974, ch. 220, § 3. The defendant had been tried for the murder of

his wife; and at the close of the state's case, he terminated the trial, pleaded guilty to the charge of murder in the second degree and received a sentence of forty years at the Adult Correctional Institutions with fifteen years suspended. The defendant alleged, and the Superior Court justice found, that he had been denied his Sixth Amendment right to the effective assistance of counsel. The state appeals from the decision granting a new trial. We reverse.

The defendant was indicted on November 19, 1976, for murder in the first degree,[1] for committing a violent crime with a firearm,[2] and for altering the serial numbers of the alleged murder weapon.[3]

The state's evidence at trial established that defendant and his wife had long maintained a stormy relationship. At the time of the shooting they were involved in divorce proceedings. On the night of November 5–6, 1976, while in possession of a gun, defendant broke into the victim's apartment. She was not home at the time. He waited for some time until she returned at around 8 a. m., after an all-night date.[4] When she arrived home, they argued for some time. Mrs. Dufresne threatened to call the police. The defendant then drew the weapon and shot her three times: he shot her first in the face, then in her left side, and finally, as she lay on the floor, he shot her in the back of the head.

The defendant then left the apartment and went to a nearby bar. He told the bartender Thomas P. Hathaway that he had shot and killed his wife. Hathaway testified that he served Dufresne two double shots of whiskey and two sixteen-ounce mugs of beer. He described defendant as a heavy and habitual drinker, who appeared to be nervous and to have already had something to drink. Police did find an open bottle of liquor at the victim's apartment.

The defendant then turned himself in to the police to whom he gave statements in which he admitted having committed the crime.

On April 12, 1977, defendant entered a plea of guilty to second-degree murder. His trial counsel had met with the state's attorney at the close of the state's case on the previous day and had consulted with defendant himself.

At the time the plea was entered, the trial justice questioned defendant, as is customary, to determine whether his plea was knowingly and voluntarily given. He informed defendant that as a result of the plea he was henceforward not entitled to a jury trial, or to the presumption of innocence, or to the right to confront and cross-examine witnesses and to present a defense, and that he was giving up his right to an appeal. The defendant stated that he understood each of these points. The trial justice also examined Dufresne regarding his commission of the murder. Specifically, defendant admitted committing the act and he admitted having had the intent to do so. The trial justice also informed defendant of the range of possible sentences which could be imposed. The trial justice then accepted defendant's plea of guilty, and expressly found it to be knowingly and voluntarily entered. His examination of Dufresne comported with established constitutional practice. *Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976); *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *see LaRoche v. Langlois*, 102 R.I. 582, 232 A.2d 365 (1967).

At the postconviction hearing, which was held at various times between September 1979 and January 1980, Dufresne claimed that his trial counsel failed to employ helpful evidence or to interview witnesses for his defense, made no pretrial motions, and generally failed to fully investigate the

---

1. General Laws 1956 (1969 Reenactment) § 11–23–1.

2. General Laws 1956 (1969 Reenactment) § 11–47–3.

3. General Laws 1956 (1969 Reenactment) § 11–47–24, as amended by P.L.1975, ch. 278, § 1.

4. There is much contradiction in the evidence concerning the exact times of events. The period relevant to the murder and events leading to defendant's arrest appears to be between eight and nine a. m. on November 6, 1976.

case. The defendant's trial counsel testified that he had made certain choices in determining the nature and conduct of Dufresne's defense. He stated that relying on his view of the case, he had specifically considered and rejected defense theories related to intoxication and self-defense.

The pertinent findings of the postconviction justice were that defendant's attorney filed no pretrial motions, did not interview all available witnesses, failed to investigate properly the facts concerning defendant's possible intoxication and its bearing on the voluntariness of statements he made to the police or as it related to a substantive defense to the charge of murder, failed to confer frequently enough with his client, did not disclose to defendant the name of the individual last seen with the victim, neglected to interview that person whose testimony would have been essential to the defense in impeaching the victim's character, failed to request or review notes of defendant's confession, and failed to visit the crime scene.

The postconviction hearing justice concluded that defendant was sufficiently prejudiced by the quality of his attorney's representation to warrant vacation of defendant's plea and sentence. It was his opinion that a different handling of the case might have produced a different result. In the decision he discussed evidence that he believed could have established mitigating circumstances or affirmative defenses. The hearing justice also said that the issue of intoxication had possible use both procedurally and substantively. None of these matters to which the postconviction hearing justice attached significance were presented at trial.

■ The findings of the hearing justice are entitled to stand undisturbed on review in the absence of clear error or a showing that material evidence was overlooked or misconceived by the hearing justice. *State v. Duggan*, R.I., 414 A.2d 788 (1980); *Palmigiano v. Mullen*, R.I., 377 A.2d 242 (1977). After careful review of both the trial record and the postconviction record, we are compelled to conclude that the postconviction

justice was in error when he vacated the plea.

The defendant's entry of the guilty plea to second-degree murder interrupted and halted the trial. That plea, therefore, fixed the posture of any further proceedings for postconviction relief. The only pertinent issue before the court, and the only issue that should have had any relevance at the postconviction hearing in the court below, was whether defendant's guilty plea was valid. The sole question was whether Dufresne knowingly and voluntarily entered his plea. Our consideration of that plea, therefore, makes discussion of the trial counsel's activities that were not related to the taking of the plea wholly irrelevant. Defendant's allegation that he was denied constitutionally effective assistance of counsel throughout the entire proceedings does not change the essential nature of our inquiry.

■ The focus of a postconviction inquiry when there has been a guilty plea is the nature of counsel's advice concerning the plea and the voluntariness of the plea. If the plea is validly entered, we do not consider any alleged prior constitutional infirmity. *Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).

"[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *Mc Mann [v. Richardson*, 397 U.S. 759, 770, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763, 773 (1970)]." *Id.* at 267, 93 S.Ct. at 1608, 36 L.Ed.2d at 243.

*Compare LaRoche v. Langlois, supra* (alleged confusion in the defendant's mind on the day prior to his plea deemed irrelevant

to issue of his full cognizance and voluntariness on the day he pleaded).

■ A defendant who pleads guilty on the advice of counsel must demonstrate at his postconviction hearing that that advice was not within the range of competence demanded of attorneys in criminal cases. *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 1448–49, 25 L.Ed.2d 763, 773 (1970). In *McMann*, the defendant-petitioner alleged that his plea of guilty, entered on the advice of counsel, was the product of a coerced confession. The defendant, Richardson, was indicted for first-degree murder. The court assigned two attorneys to represent him. Richardson initially pleaded not guilty but withdrew his plea and pleaded guilty to second-degree murder, specifically admitting that he stabbed the victim. He received a minimum sentence of thirty years. After his sentencing, Richardson alleged that he was beaten into confessing the crime, that his assigned attorney conferred with him only ten minutes prior to the day the plea was entered, that he told his attorney he did not want to plead guilty to an act he did not commit, and that his attorney advised him to plead guilty in order to avoid the death penalty, explaining that Richardson could later attack the confession on a writ of habeas corpus. *Id.* at 762–63, 90 S.Ct. at 1444–45, 25 L.Ed.2d at 768–69.

A copetitioner, Dash, alleged that his coerced confession was the product of a trial judge's threat to impose a sixty-year sentence if he was found guilty of first-degree robbery. Dash asserted that the threat was made during an off-the-record colloquy. He averred that he was beaten, refused counsel, and threatened with false charges. Further, he alleged that his court-appointed attorney advised him to plead guilty to second-degree robbery because his confession apparently made the state's case overwhelming. A second copetitioner, Williams, was indicted for five separate felonies and pleaded guilty to second-degree robbery. He alleged that he did not comprehend the nature of the charge and the consequences of the plea. His petition described how he had been physically abused and threatened until he confessed and that his attorney, in advising him to plead guilty, ignored his alibi defense and represented to him that the plea would be to a misdemeanor rather than to a felony charge. *Id.* at 761–64, 90 S.Ct. at 1443–45, 25 L.Ed.2d at 767–69.

The Court of Appeals ordered hearings on these petitions for habeas corpus. In addition to the issue of coercion, that court ordered investigation of whether Richardson's attorney rendered inadequate counsel by conferring with him for so short a period and advising him that the confession could be raised following sentencing, whether Dash's trial judge threatened him with severe sentencing, and whether Williams's counsel failed to consider his alibi and to make clear that he was indeed pleading to a felony. *Id.* at 765–66, 90 S.Ct. at 1446, 25 L.Ed.2d at 770.

■ The circumstances outlined in *McMann* are not unlike defendant's in that we are dealing here with a counseled defendant who, but for the incriminating statements that were admitted against him, would probably have seen the trial through to a verdict. The obvious reason for entering the plea was that the state's case was too strong to contest in view of the fact that the admissible evidence included the confessions.

These circumstances are insufficient to suggest that defendant's plea was unintelligent or involuntary.[5] In the case at bar, the compulsion to plead guilty was all the stronger because defendant's confessions were in fact admitted into evidence after a hearing on their admissibility.

The requirement that the plea be intelligent and voluntary does not assume that counsel's advice need "withstand retrospective examination in a postconviction hearing." *Id.* at 770, 90 S.Ct. at 1448, 25 L.Ed.2d at 773. The issue whether coun-

---

5. *See generally Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970);

*Parker v. North Carolina*, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970).

sel's judgment concerning the confessions' admissibility was correct or incorrect can be no part of defendant's attack of his plea.

"In our view, a defendant's plea of guilty based on reasonably competent advice, is an intelligent plea not open to attack on the ground that counsel may have misjudged the admissibility of the defendant's confession." [Footnote omitted]. *Id.*

Our conclusion regarding the voluntary nature of Dufresne's plea of guilty must rest upon whether or not the underlying advice falls within the range of competence demanded of attorneys in criminal cases. The range of competence and counsel's ordinary error in the assessment of either law or facts are not contradictory concepts. On the contrary such ordinary error is a risk that any defendant assumes upon entering a plea. *See Id.* at 774, 90 S.Ct. at 1450, 25 L.Ed.2d at 775.

The record of this case discloses that the state of the evidence as of April 11, 1976, clearly warranted Dufresne's consideration of a plea of guilty to the reduced charge of second-degree murder. Under *McMann, supra,* it is not our concern how that sum of evidence came to exist. The evidence contained the defendant's repeated and unsolicited admissions of the crime both to the police and to a civilian. All of these withstood challenge under *Miranda.* The strength of the state's case based on these and other facets of the evidence motivated the plea. The trial justice gave close attention to the defendant's plea and correctly determined its voluntariness. Counsel's advice to the defendant to plead guilty was therefore within the range of competence demanded of criminal attorneys. The posture of this case precludes any second-guessing of his judgment. The entry of the plea renders moot any consideration of alternative courses of defense, no matter how valid or cogent they might have been at the time of trial.

The state's appeal is sustained, the judgment below is reversed, and the judgment of conviction is re-instated. The papers of the case are remanded to the Superior Court.