DECISION
Petitioner, Booker Crum, is before the Court on his Application for Post-Conviction Relief pursuant to R.I.G.L. § 10-9.1-1. originally filed, pro se, on November 20, 2000.
 TRAVEL
In K2/ 1990-0838A, Petitioner on December 7, 1990 plead nolo contrendere to a count of larceny from the person and received a full sentence of ten years with two years to serve, eight years suspended and eight years probation.
In P2/ 1998-3603A, Petitioner on November 6, 1998 plead nolo contrendere to one count of delivery of a controlled substance and received a full sentence of ten years with eighteen months to serve, eight and one-half years suspended with eight and one-half years of probation.
In February 2000, Petitioner was arraigned on District Court Complaint 62/00-2627, on the charge of first-degree robbery that was alleged to have been committed on February 15, 2000 in Pawtucket, Rhode Island. Thereafter, Petitioner was presented before the Superior Court as an alleged violator of the suspended sentences and probationary terms imposed in K2/ 1990-0838A and P2/1998-3603A. These matters were scheduled for determination of attorney on February 25, 2000.
According to the files in these matters that action (determination of attorney) was completed on February 25, 2000. Thereafter, the matter was scheduled for "violation hearing" on eight separate occasions (March 3, March 10, March 24, March 31, April 11, April 25, May 3 and May 10, 2000). According to the court files, on March 3, March 10, March 24 and May 3, 2000, the hearing was rescheduled at Petitioner's counsel's request because the matter was "pending further investigation." On March 31 and April 25, 2000, the matter had to be rescheduled because "defense atty on trial [in] other court" and because "defense atty unavailable."
On May 10, 2000 before the violation hearing commenced, Petitioner, with the assistance of his attorney, first waived his right to have the District Court complaint of first-degree robbery considered by this Court without formal indictment by a Grand Jury for probable cause. Petitioner thereafter entered a plea of nolo contrendere to the offense of first-degree robbery and was sentenced to the Adult Correctional Institution for twenty-five years, five years to serve, twenty years suspended with probation. In both K2/90-083A and P2/98-3603, petitioner was declared a violator of his previous probation and continued on the same sentences previously imposed.
On November 20, 2000, Petitioner filed, pro se, his "Application For Post-conviction Relief" on the stated grounds:
 "1) Applicant requests that the plea entered on May 10, 2000 be (vacated) on the following grounds.
 (A) The gist of Applicants grounds is that said Applicant always maintained his innonce, (sic) and that Applicant did not want to a (PLEABARGAIN).
 B) That said Applicant shall prove that trial Judge did not accept the plea on factual basis and that trial Judge did not comply with requirements of Rule (11), To assure on record that the plea was voulentary (sic) under Rhode Island standards also see, Mccarthy v. United States (394 U.S. 459) (89 S.Ct. 1166). To inquiry into the accused personally to see if the plea was induced coecered or any threats or promises, Also under Rule (11) the trial Judge did not ask Applicant about his (EDUCATION) or if Applicant was satisfied with Applicant's counsel services. Also see, 18 U.S.C.A. Const. Amends, (5) (14).
 C) [T]hat Applicant shall prove through conusel (sic), that the states prosecutors, Did knowlying 
willingly misconcieve the trial Judge to the facts and elements of the crime charged in the capital proceeding on the 10day of May 2000 in closeing (sic) arguments.
 D) [T]hat said Applicant shall prove through counsel, that the He was in denial of affective (sic) counsel, As required under the 6th amendment, that said counsel was ineffective and violated the Applicant's Rights of Due Process as well as constitutional laws. Along with a (#) of statues, From (2-25-2000) To 5-10-2000."
Thereafter, Petitioner on December 1, 2000 filed an "amended petition." The "amended petition" repeated the same grounds for relief that were raised in the original petition. On January 5, 2001, the court (Fortunato J. Presiding) granted Petitioner's request for the appointment of counsel to assist Petitioner in his post-conviction matter.
On April 30, 2001, the court conducted an evidentiary hearing (hearing). Following the hearing, the court granted the request of the parties to submit written memorandum of law. Petitioner filed his "Memorandum in Support of Post-Conviction Petition" on May 21, 2001. By written agreement filed May 29, 2001, State of Rhode Island (Respondent), was allowed to submit its reply memorandum by June 8, 2001. On June 8, 2001, Respondent filed its "Memorandum is Support of State's Objection to Petitioner's Request for Post-Conviction Relief."
 DISCUSSION PART I
Petitioner in his "Memorandum In Support of Post-Conviction Petition" addresses three (3) separate grounds upon which his Application for Post-Conviction Relief should be granted:
 "1) his attorney rendered ineffective assistance of counsel to him in connection with this plea because he prevented [petitioner] from informing the Court of his innocence;
 2) the Court did not establish that his plea was voluntary, as required by Rule 11, because he never was asked this question; and
 3) there was not a factual basis for his pleas during the plea colloquy [petitioner] never admitted that he committed the crimes with which he was charged."
A review of the entire transcript of the May 10, 2000 proceeding establishes the first issue addressed by the court were the two matters scheduled for violation hearing, K2/90-083A and P2/98-3603. (Tr. pg. 1, lines 9-10; pg. 2, lines 1-3). As the transcript further shows, Respondent, in consideration of Petitioner's voluntarily waiving the charges in the underlying first-degree robbery of Thomas Hill being presented before a Grand Jury (Tr. pg. 2, lines 10-25, pg. 3, lines 10-15), and entering his plea of nolo contendere to the charge, recommended a sentence of twenty-five years with five years to serve, twenty years suspended with twenty years probation (Tr. pg. 9, lines 12-17) and further that Petitioner be continued on the original sentences imposed in K2/90-838 and P2/98-3603 (Tr. pg. 13, line 18). Additionally, Respondent agreed not to pursue another potential charge against Petitioner (Tr. pg. 13, lines 22-25; pg. 14, lines 1-7) and would not file a "habitual offender" notice against Respondent as a result of the new charge. (Tr. post-conviction hearing page 28, lines 3-6).
The transcript from the May 10, 2000 hearing reveals that the court after first ascertaining that Petitioner signed the plea form (Tr. pg. 4, lines 11-14); that he did so after reading the plea form, understanding his rights, and having his rights explained to him by his attorney (Tr. pg. 4, lines 15-23), went on to advise and explain all of the rights Petitioner was waiving by pleading nolo contrendere to the charge. (Tr. pg. 4, lines 24-25 through pg. 7, line 11). After the court inquired if Petitioner understood the rights he was waiving, the court asked Petitioner to listen to what facts Respondent believed it would prove at trial and advised Petitioner, "after which I'll ask you if you agree and admit to the facts." (Tr. pg. 7, lines 12-15).
Respondent stated the facts as follows:
 ". . . had this matter gone to trial, the State would have been able to prove beyond a reasonable doubt that on or about February 15th of this year, this defendant, Booker Crum, did rob Thomas Hill in violation of 11-39-1 of the Rhode Island General Laws, to wit, first degree robbery." (Tr. pg. 7 lines 17-22).
Based on this summary recitation, the court inquired, "Do you have other facts that the State would be prepared to prove?" (Tr pg. 7 lines 23-24). Respondent continued:
 ". . . had this matter gone to trial, the State would have been able to prove that as a result of the robbery committed by this defendant, the victim in this matter had injuries and was treated at Memorial Hospital for a broken nose, chipped teeth and broken facial bones and he had substantial injury to his right eye."
The court, not being satisfied that a sufficient factual basis existed immediately, inquired further from Respondent:
 "When the State says that the defendant committed a robbery, what facts would the State have been prepared to prove to support the conclusion that he [Petitioner] did commit a robbery?" (Tr. pg. 8, lines 7-10).
Respondent replied:
 "That on or about February 15th of this year, this defendant did go into an apartment at 59 Prospect Street and where the victim was with another person and had an argument with the victim and the defendant took money from the victim's pocket and then proceeded to beat the victim." (Tr. pg. 8, lines 11-16).
At this juncture of the plea colloquy, the court asked Petitioner, "Mr. Crum, do you understand those facts?" (Tr. pg. 8, lines 17-18). He replied "Yes, sir." (Tr. pg. 8, line 19). The court then inquired, "Do you agree and do you admit that had this matter gone to trial, that those facts would have been proved at trial beyond a reasonable doubt?" (Tr. pg. 8, lines 20-22). Respondent replied "Yes. Your Honor —" (Tr. pg. 8, line 23). It is at this point Petitioner claims "he attempted to inform the Court of his innocence but was stopped by his attorney, who covered the microphone and told him words to the effect that he had better shut up or he was going to get more time." (Tr. post-conviction hearing page 16, lines 9-24). It was this conduct by his attorney, coupled with his claim of innocence of the offense of first-degree robbery Petitioner argues supports his claim of ineffective assistance of counsel.
Without any question, Petitioner and his attorney engaged in a private discussion immediately following Petitioner's admission as to the facts Respondent said they could prove. As the transcript from the plea-hearing shows following the period of time Petitioner conferred privately with his attorney, his attorney stated:
 "Your Honor, I'm sorry. Mr. Crum and I had somewhat of an extensive conversation about the facts as they would be read into the record. I just want to note for the record that, in fact, it's my understanding that the State's allegations would have included the taking, carrying away by force of a wallet, but there was no money in the wallet from Thomas Hill. So that's —" (Tr. pg. 8-9, lines 24-6)
And the court responded, "taking property belonging to another by force; is that correct?" (Tr. pg. 9, lines 7-8). To which Petitioner's counsel replied "Correct, with the intent to deprive of the value." (Tr. pg. 9, lines 9-10).
At "hearing" on his Post-Conviction Application, Petitioner testified that when he and his attorney had their private conversation following his admission of the facts as stated by the Attorney General, he was scared of his attorney to the extent that he refrained from advising the court that he was not guilty of the offense charged. (Tr. post-conviction hearing page 19, lines 11-17). Petitioner's former attorney testified at "hearing" and denied in any way threatening Petitioner during their private conversation. Petitioner's former attorney testified further that the conversation had to do with the prosecutor incorrectly stating the facts, specifically the presence of money in a wallet taken from the victim. (Tr. post-conviction hearing page 55, line 6-18). This testimony was corroborated by Petitioner when he testified that when the pause occurred during the plea, "Well, the prosecutor stated things that I did not do and I would not admit that." (Tr. post-conviction hearing page 16, lines 1-2).
In Petitioner's Pro Se "Memorandum in Support of Petition For Post Conviction Relief" filed December 1, 2000, he raises other claims (e.g. Failure to file Motion to Suppress based upon unconstitutional search and seizure; denial of Sixth Amendment right to communicate with counsel; right to a "preliminary hearing"; prosecutorial misconduct; failure to file pretrial motions; delay in the proceedings), however, when the matter was resolved by plea rather than by trial "[t]he focus . . . is the nature of counsel's advice concerning the plea and the voluntariness of the plea." State v. Dufresne, 436 A.2d 720, 723 (R.I. 1981) (citing Tollett v. Henderson, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973)).
The Rhode Island Supreme Court has adopted the test established in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) when considering post-conviction relief applications. When the post-conviction arises from a plea as opposed to following trial the same test applies. LaChappelle v. State, 686 A.2d 924, 927 (R.I. 1996) (citing State v. Figueroa, 639 A.2d 495, 500 (R.I. 1994); Hill v. Lockhart,474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). To prevail on a post-conviction application the Petitioner must first show "that counsel's representation fell below an objective standard of reasonableness." LaChappelle, supra at 927 (citing State v. Brennan, 627 A.2d 842 (R.I. 1993)) (quoting Strickland). Secondly, Petitioner must show "a reasonable probability that but for counsel's errors, he or she would not have pleaded guilty and would have insisted on going to trial." LaChappelle 686 A.2d at 927 (citing Figueroa, 639 A.2d at 500) (internal citation omitted). Petitioner, ". . . must demonstrate at his post-conviction hearing that the advice was not within the range of competence demanded of attorneys in criminal cases." State v. Desir, 766 A.2d 374, 375 (R.I. 2001) (citing State v. Dufresne, at 723).
In post-conviction matters "a strong presumption in favor of competent representation exists." Figueroa, 639 A.2d. at 500 (citing Strickland466 U.S. 668 at 689-90, 104 S.Ct. 2052 at 2065, 80 L.Ed.2d 674 at 694-95). In this matter, Petitioner must prove that the advice allegedly given ". . . shut up or you will get more time. . . ." even if given was not within the range of competence demanded of attorneys in criminal cases. Further the proof required is proof "by a preponderance of the evidence." Figueroa, 639 A.2d at 498 (citing Cole v. Langlois,99 R.I. 138, 206 A.2d 216 (R.I. 1965)).
While Petitioner at hearing testified he was not guilty of the charge brought against him, and that he only admitted to the charge because he was scared and felt intimidated by counsel telling him to "shut up or you will get more time," his former counsel denied he threatened or intimidated Petitioner at any time. In deciding if Petitioner satisfied his burden of proof on this issue, the court looks not only to the testimony of the witnesses but to other evidence that is available. Reviewing the transcript from the plea proceeding, following the prosecutor's recitation of the facts the State believed it would have proven at trial, the court asked Petitioner "Do you agree and do you admit . . . that those facts would have been proved at trial . . ." His reply was "Yes." (Tr. page 8, lines 20-23). The transcript goes on to say "Your honor — ". It was at this point he alleges the statement was made to him by his former counsel. Petitioner was afforded the opportunity to speak before sentence was imposed upon him. Rather than raise then the claim he makes in his post-conviction application concerning the threat, the only issue he chose to speak on was his request for a stay of execution. (Tr. page 10, line 6; page 12, line 19). Additionally, when the court denied Petitioner's request for stay, the court advised Petitioner "Because of the nature of offense, and for no other reason, . . ." rather than advising the court of his claimed innocence, he requested that he be permitted to hug and kiss members of his family that were in attendance. (Tr. page 12, lines 20-22).
Petitioner admitted during cross examination that before May 10, 2000 he had previously entered pleas of nolo contrendere to other criminal charges (Tr. post-conviction page 25-26, lines 25-1). When the plea was entered stemming from the events on February 15, 2000, Petitioner was alleged to have violated two prior felony charges to which Petitioner could have been sentenced to eight years. The court rejects and finds as not being credible Petitioner's testimony that he did not understand the rights he was waiving by pleading nolo contrendere on May 10, 2000; that he only did so to because "I didn't want to seem like an idiot. . . ." (Tr. post-conviction hearing page 27, lines 2-6). The court also rejects and finds as not being credible that he never understood the rights when he previously plead nolo contrendere. (Tr. post-conviction hearing page 26, lines 2-6). It is clear Petitioner, on May 10, 2000 was aware that if he rejected the disposition offered, he faced eight years as a violator in addition to a possible twenty-five years as a habitual offender. (Tr. post-conviction hearing page 28-29, lines 23-2).
On the first claim that his counsel was ineffective, the Court rules Petitioner has failed to prove his contention that his former attorney's representation fell below an objective standard of reasonableness even accepting his claim he was told "shut up or you will get more time." The Court denies Petitioner's claim for post-conviction relief on this ground.
 PART II.
Petitioner's second and third grounds raise related issues. Petitioner claims the court did not establish that his plea was voluntary because he was not asked the question and the lack of a factual basis for the plea as he never admitted he committed the crimes charged.
As discussed in Part I of this decision, that portion of the transcript from the May 10, 2000 proceeding specifically addressing the plea to the charge of robbery begins on page 4 line 3 through the end of the transcript on page 14 line 10.
Before the court reviewed with Petitioner the rights he was waiving by pleading nolo contender to the charge, the court asked Petitioner if the plea form submitted (attached to this Decision as Appendix A) had been read, and signed by Petitioner. Petitioner confirmed that he had both read and signed the plea form. (Tr. page 4, lines 11-17). The plea form contains the following statement:
 "I have discussed the entire content of this form with my Attorney, who has explained it to me. I have no questions as to what it states and means, and I understand it completely. I swear to the truth of the above." (Emphasis added).
Below this statement was first his attorney's signature then Petitioner's.
During the course of the court's colloquy with Petitioner and after determining that Petitioner had both read and signed the plea form, the court made further inquiry of Petitioner that Petitioner understood the rights contained in the plea affidavit before he signed it. (Tr. page 4, lines 18-20). Also, that his attorney explained the rights he was waiving before Petitioner signed the plea affidavit. (Tr. page 4, lines 21-23). The court then personally addressed Petitioner as to his knowledge and understanding of the rights he was waiving by pleading nolo contendere to the charge and Petitioner answered each question affirmatively. (Tr. page 4, line 24; page 7, line 8).
The Rhode Island Supreme Court has held that a trial court's explanation to a defendant of the rights he was waiving and the affirmative responses by the defendant to the courts inquiry was sufficient. That "[n]either the Constitution, nor Rule 11 requires more. . . ." State v. Feng, 421 A.2d 1258, 1269 (R.I. 1980) (citing State v. Williams, 404 A.2d 814 at 820 (R.I. 1979)).
As discussed above in Part I of this decision, despite Petitioner's testimony to the contrary, at no time during the taking of the plea did he state or suggest that he was not entering his plea voluntary. While it is accurate that the court did not expressly ask the question, unlike the factual setting of the principal case relied upon by Petitioner, Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), where from the record of that case ". . . the judge asked no questions of petitioner concerning his plea, and petitioner did not address the court." U.S at 239, the record in this matter is replete with questions asked by the court, responses by and questions asked by Petitioner. Nor, as the travel of this matter shows that the plea entered was done so with the same haste evidenced in Boykin. K2/1990-0838 and P2/1998-3603 and the underlying charge supporting the violations had been pending before the court for approximately two and one-half months at the time of disposition, May 10, 2000. From these facts, together with Petitioner's affirmative responses to the questions put to him, it was permissible for the court to "reasonably infer" his voluntariness although the specific question was not asked of him. U.S. v. DeForest, 946 F.2d 523, 525(7th Cir. 1991) (citing U.S. V. Gallman, 907 F.2d 639 (7th Cir. 1990) cert. denied 111S.Ct. 1110, 113 L.Ed.2d 219 (1991)).
As to the last claim, there was not a factual basis for his plea, the court, in Feng, held Rule 11 of the Rules of Criminal Procedure were adopted to safeguard a defendant's rights. However, the adoption ". . . did not intend that the rule serve as a trap for those justices who fail to enumerate each fact relied on to accept such a plea." 421 A.2d. At 1269. As addressed in Part I of this decision, supra at page 3, Respondent, as the transcript clearly demonstrates, recited facts it believed would support the plea. The court did not accept the naked assertion offered but requested if there was more.
Respondent gave additional facts to which the court asked Respondent:
 "When the State says that the defendant committed a robbery, what facts would the State have been prepared to prove to support the conclusion that he (Petitioner) did commit a robbery?" (Tr. page 8, lines 7-10)
Respondent replied:
 "That on or about February 15th of this year, this defendant did go into an apartment at 59 Prospect Street and where the victim was with another person and had an argument with the victim and the defendant took money from the victim's pocket and then proceeded to beat the victim."
The court expressly asked Petitioner if he understood the facts to which he replied he did. The court then asked Petitioner "Do you agree and do you admit that had this matter gone to trial, that those facts would have been proved at trial beyond a reasonable doubt?" Petitioner replied "Yes. . . ." (Tr. page 8, lines 20-23).
While Respondent's statement of the facts may not represent a model of clarity, and while the courts further colloquy with Petitioner's counsel may have lacked precision, taken as a whole there was a sufficient factual basis before the court to allow it to accept Petitioners plea.
Based upon the specific grounds raised in his Memorandum In Support of Post-Conviction Petition filed May 29, 2001, Petitioner's Application for Post-Conviction Relief is denied. The other grounds raised in Petitioner's original and amended petition which were not argued and briefed are also denied. Counsel for Respondent shall submit an order consistent with this Decision.