**Richard HASSETT**

v.

**STATE of Rhode Island.**

**No. 2004–77–Appeal.**

Supreme Court of Rhode Island.

June 2, 2006.

Stephen T. Morrissey, Esq., for Plaintiff.

Virginia M. McGinn, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice FLAHERTY, for the Court.

Richard Hassett appeals after a justice of the Superior Court denied his application for postconviction relief. Hassett was convicted of a number of criminal counts arising from an alcohol-related automobile accident, which resulted in the death of one person and injuries to two others. Hassett's conviction was not the product of a verdict after trial. Instead, pursuant to a plea agreement, he received a twenty-five-year sentence, with fifteen years to

serve in prison and the rest suspended. As grounds for this appeal, Hassett argues that the hearing justice should have granted his application for postconviction relief because of the allegedly ineffective assistance of the attorney who represented him when he entered his plea.

# I

## Facts and Travel

On October 4, 1996, Josephine Elgar was driving along Route 102 in Glocester with her husband, Harold Elgar, in the passenger seat. The Elgars were enjoying the fall foliage, but their pleasant day came to a sudden and tragic end when, according to witness statements, Hassett crossed over the center line of the road in his Chevy Blazer and slammed into their car, knocking it into the path of an oncoming vehicle. Harold Elgar was killed in the accident. His wife and an occupant of that other vehicle, Caroline Hannagan, both suffered injuries.

When Officer Jamie Hainsworth arrived at the accident scene, an occupant of the Hannagan vehicle pointed toward Hassett and said, "that's the guy that caused the accident, don't let him get away." When Hainsworth approached Hassett, he detected a strong odor of alcohol, and he observed that his speech was "extremely slurred." These observations were consistent with the statements of other witnesses, who observed that Hassett was driving "erratically" and appeared to be "intoxicated." [1]

After Hassett failed a field sobriety test, he was arrested and brought to the police station. Because he refused to submit to a blood alcohol test, the police obtained a warrant to withdraw his blood so that it could be tested. That test revealed that Hassett's blood alcohol content was 0.239. Hassett subsequently was charged by criminal information with one count of driving under the influence (DUI), death resulting, in violation of G.L.1956 § 31–27–2.2; one count of driving so as to endanger, death resulting, in violation of § 31–27–1; two counts of DUI, resulting in serious bodily injury, in violation of § 31–27–2.6; two counts of driving so as to endanger, resulting in serious bodily injury, in violation of § 31–27–1.1; and one count of driving on a suspended license after a previous conviction for DUI, in violation of G.L.1956 § 31–11–18.1.

Hassett originally was represented by an attorney from the Public Defender's office, but he later retained private counsel. His new attorney filed an entry of appearance on March 26, 1997, and a trial date was set for September 1997. However, the case against Hassett never went to trial. Instead, after conferring with counsel, Hassett pleaded guilty to six of the seven counts lodged against him. [2] He received a twenty-five-year sentence, with fifteen years to serve and the balance to be suspended, with probation, including a ten-year loss of license upon his release. The fifteen-year jail term specifically was attributed to the charge of DUI, death resulting. Hassett was sentenced concurrently on the remaining charges, except for one count of DUI, resulting in serous bodily injury, for which he received a ten-

---

1. One witness observed Hassett at a nearby gas station shortly before the accident. She noted that Hassett was "staggering," and after he entered his vehicle, he was unable to close his car door, apparently because he did not realize that his foot was still hanging outside the vehicle.

2. Pursuant to Rule 48(a) of the Superior Court Rules of Criminal Procedure, the state dismissed count 5, which alleged DUI, resulting in serious bodily injury to Carolyn Hannagan, in violation of G.L.1956 § 31–27–2.6.

year suspended sentence, with probation, to be served consecutively upon his release from incarceration.

Apparently unhappy with the deal he had struck, Hassett filed a *pro se* application for postconviction relief in September 2000, but counsel soon was appointed for him. Thereafter, he amended his application and alleged a multitude of deficiencies related to the performance of the private attorney who represented him when he pleaded to the criminal charges. After a hearing, a justice of the Superior Court denied his application, and Hassett timely appealed.

This case came before the Supreme Court for oral argument on May 2, 2006, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda submitted by the parties, we are of the opinion that cause has not been shown, and we shall decide the case at this time without further briefing or argument. For the reasons set forth herein, we affirm the judgment of the Superior Court.

## II

### Standard of Review

■ A hearing justice's findings on an application for postconviction relief " 'are entitled to stand undisturbed on appeal in the absence of clear error or a showing that material evidence was overlooked or misconceived.' " *Miguel v. State*, 774 A.2d 19, 21 (R.I.2001) (quoting *Simpson v. State*, 769 A.2d 1257, 1265 (R.I.2001)). However, when a decision on postconviction relief involves questions of fact or mixed questions of law and fact related to an alleged violation of an applicant's constitutional rights, this Court applies *de novo* review. *Ouimette v. State*, 785 A.2d 1132, 1135 (R.I.2001).

## III

### Analysis

As grounds for this appeal, Hassett alleges a number of deficiencies related to his private attorney's performance. The gravamen of his argument to this Court is that if the attorney had represented him more effectively, he would not have entered into a plea agreement, and therefore his plea should be set aside because it was not made knowingly, intelligently, or voluntarily.

When Hassett entered his plea before the court, the following exchange took place:

"THE COURT: I have before me a request to change plea, Mr. Hassett. Did you sign this?

"THE DEFENDANT: Yes, I did.

" * * *

"THE COURT: Did you discuss this change of plea document with your lawyer before you signed it?

"THE DEFENDANT: Yeah, I did.

"THE COURT: Are you satisfied with her assistance on your behalf?

"THE DEFENDANT: Yes, I am."

After this exchange, an attorney for the state summarized the evidence, noting that the state would have been able to present evidence on each charge beyond a reasonable doubt. The colloquy between the justice and Hassett then continued as follows:

"THE COURT: You have a right to trial on these charges, Mr. Hassett. You would have been presumed innocent at trial. You would not have had to testify or present evidence. The State would have had to prove your guilt beyond a reasonable doubt. You would have had the right and the opportunity

to confront and cross-examine the State's witnesses against you.

"If convicted at that trial, you could have appealed your conviction to the Supreme Court. If I accept your change of plea to these various counts, there will be no trial. All those rights and privileges disappear and they're waived. Do you understand that?

"DEFENDANT: Yes.

" * * *

"THE COURT: Has anyone forced you or coerced you to change your plea this morning?

"THE DEFENDANT: No.

"THE COURT: Are you pleading guilty to these offenses because you did in fact commit them?

"THE DEFENDANT: Yes.

"THE COURT: I'm satisfied that there is a basis in fact for the charges; that the defendant understands all the rights and privileges that he is giving up. The plea is made knowingly, intelligently, and voluntarily."

It is patently clear from his exchange with the justice that Hassett was well aware that by pleading guilty he was waiving the panoply of rights attendant to a criminal trial. Now, in this collateral attack on his conviction, he attempts to raise many of the issues that might have been grounds for direct appeal by claiming that he is entitled to postconviction relief because of the ineffective assistance of his attorney.

 This Court previously has explained that "[t]he sole focus of an application for post-conviction relief filed by an applicant who has pled guilty is 'the nature of counsel's advice concerning the plea and the voluntariness of the plea. If the plea is validly entered, we do not consider any alleged prior constitutional infirmity.' " *Miguel*, 774 A.2d at 22 (quoting *State v. Dufresne*, 436 A.2d 720, 722 (R.I.1981)). To successfully challenge the voluntariness of a plea, an applicant seeking postconviction relief must establish that the advice of his attorney "was not within the range of competence demanded of attorneys in criminal cases." *Id.* (quoting *Dufresne*, 436 A.2d at 723). It is incumbent upon the applicant to demonstrate that he would have not entered a guilty plea and would have instead proceeded to trial were it not for the attorney's errors. *Carpenter v. State*, 796 A.2d 1071, 1074 (R.I.2002).[3]

With these principles in mind, we begin our analysis by noting that when counsel undertook this engagement, she was faced with a very difficult case. One man was dead, two other people were injured, and the observations of several eyewitnesses uniformly supported the conclusion that Hassett was profoundly intoxicated and had been operating his vehicle in a reckless manner when the fatal accident occurred. Given the gravity of this evidence, it is not surprising that the public defender who first represented Hassett and his later private counsel both advised him to enter into a plea agreement.

During his colloquy with the justice, Hassett indicated that he was "satisfied" with his attorney's advice and that no one had forced or coerced him to change his plea. Despite those unequivocal responses to the justice's questions, Hassett now alleges a number of deficiencies of constitutional dimension related to his private attorney's performance, including that she

**3.** In *State v. Dunn*, 726 A.2d 1142, 1146 n. 4 (R.I.1999), we noted that challenges to the performance of private counsel in postconviction relief proceedings rarely succeed, and when a person selects his or her own attorney, any alleged deficiencies seldom amount to an infringement of one's constitutional rights.

failed to interview witnesses or investigate the accident scene, that she failed to maintain contact with him, and that she was remiss in not filing certain motions challenging the evidence and the charges against him.

■ For example, Hassett argues that the charges of driving to endanger and DUI should have been merged into one offense. However, it is well settled that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *State v. Ahmadjian*, 438 A.2d 1070, 1086 (R.I.1981) (quoting *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932)). Although Hassett was charged with multiple offenses arising from the same motor vehicle accident, conviction for driving to endanger requires proof of recklessness, while a conviction for DUI requires proof of intoxication. *See State v. Weeden*, 94 R.I. 1, 177 A.2d 182 (1962) (conviction for DUI does not require proof of recklessness). Because each of the charged offenses against Hassett required different elements of proof, we reject his argument that the charges of driving to endanger and DUI should have been merged.

■ Hassett further contends that his attorney should have sought dismissal of the charges involving serious bodily injury under § 31–27–2.6 (DUI, serious bodily injury resulting) and § 31–27–1.1 (driving to endanger, serious bodily injury resulting).

According to him, the injuries Ms. Elgar and Ms. Hannagan sustained were not serious enough to meet the statutory standards for these offenses. However, it is undisputed that both women were injured in the accident, and Hassett himself acknowledged at his postconviction hearing that Elgar was still receiving medical treatment months after the accident. The charges against Hassett certainly would have survived a challenge under Rule 9.1 of the Superior Court Rules of Criminal Procedure, and the extent of his victims' injuries was ultimately a question of fact that a fact-finder would have resolved. *See* Rule 9.1 (requiring defendant to show lack of probable cause on motion to dismiss a criminal charge). In our opinion, it would have been pointless for his attorney to challenge these charges before trial, and when he pleaded guilty, Hassett admitted that he did, in fact, commit the crimes as charged.

■ Nonetheless, even if we accepted Hassett's argument that the charges alleging serious bodily injury should have been dismissed, the state had strong evidence on the charges of DUI, death resulting, in violation of § 31–27–2.2, and driving to endanger, death resulting, in violation of § 31–27–1. These charges, standing alone, could have warranted up to twenty-five years in prison if he had been sentenced consecutively on both counts. *See* § 31–27–1 (ten-year maximum sentence); § 31–27–2.2 (fifteen-year maximum sentence). Hassett contends that his fifteen-year jail sentence exceeded the applicable sentencing benchmarks,[4] but the benchmarks ex-

---

4. At the time of his plea in 1997, the Superior Court Sentencing Benchmarks did not include the offense of DUI, death resulting, in violation of § 31–27–2.2. *See* Superior Court Sentencing Benchmarks, Introductory Notes to the 1998 Benchmark Revisions, Note 15 (1998). This offense was added when the benchmarks were amended in 1998, with a recommended sentencing range of three to ten years. *Id.* However, both the current and past versions of the benchmarks state that a sentencing departure may be appropriate based on convictions for similar offenses and harm to a victim. Superior Court Sen-

plicitly say that a sentencing departure may be appropriate based on a defendant's criminal history. Superior Court Sentencing Benchmarks, Departure from Benchmarks (1998); Superior Court Sentencing Benchmarks, Departure from Benchmarks (1984). By Hassett's own admission, he had three prior convictions for driving under the influence. The sentencing justice's observations are particularly illuminating on this point:

"In view of your history of alcohol abuse behind the wheel of a motor vehicle, it is abundantly clear that only severe punishment will make an impression on you and keep others on the road safe from you."

It also is clear under the benchmarks that "the decision about whether the sentences should be concurrent or consecutive should remain at the discretion of the sentencing judge." Superior Court Sentencing Benchmarks, Using the Benchmarks, Note 7 (1998); Superior Court Sentencing Benchmarks, Using the Benchmarks, Note 7 (1984). For example, in *State v. Collins*, 714 A.2d 610 (1998) (mem.), we affirmed the Superior Court's denial of a motion to reduce sentence after the defendant was convicted for DUI, death resulting, and received the maximum penalty allowable under the statute, in addition to consecutive sentences on the remaining counts of DUI, serious bodily injury resulting. We held that the sentence was within the justice's discretion based on the circumstances of the case and the defendant's prior criminal conduct and driving record.

█ Hassett also received the maximum penalty allowable by statute for the charge of DUI, death resulting, but unlike the defendant in *Collins*, Hassett negotiated concurrent jail sentences on the remaining charges, even though it would have been well within the justice's discretion to sentence him consecutively if he had taken his chances at trial.[5] This certainly was a very distinct possibility given his past convictions and the evidence against him, including the observations of witnesses who said that he was "staggering," that he had been driving "erratically," and that he "appeared to be intoxicated." We therefore reject the argument that the sentence was excessive and that his attorney was deficient in advising him to accept a plea agreement.

█ Hassett raises a number of other issues related to the performance of his attorney, most of which allege a lack of diligence and pretrial preparation. In our opinion, these arguments have no merit whatsoever. He also suggests that we should draw certain inferences from his attorney's decision to invoke her Fifth Amendment privilege when she was asked during the postconviction relief proceeding if she had been using illegal drugs while she represented him. However, the hearing justice specifically found that there was no indication that his attorney had been incapacitated, and he went on to describe the attorney as "competent" and "articulate."[6] In the absence of any contrary evidence, we decline to second-guess the hearing justice's findings on this point.

tencing Benchmarks, Departure from Benchmarks (1998); Superior Court Sentencing Benchmarks, Departure from Benchmarks (1984).

5. Hassett received a consecutive sentence on one charge of DUI, serious bodily injury resulting; however, his sentence on this charge was suspended, with probation. As a condi-

tion of his probation, Hassett agreed to a ten-year license suspension to commence upon his release from jail.

6. The hearing justice at Hassett's postconviction relief hearing was the same justice who presided over his plea proceedings.

Furthermore, even if we accepted this allegation and Hassett's remaining allegations of error as true, it is well settled that a claim of ineffective assistance requires an applicant for postconviction relief to prove that the result of the proceeding would have been different were it not for the performance of his attorney. *See, e.g., Carpenter,* 796 A.2d at 1074 (applicant must show that "absent counsel's deficient performance, the result of the proceeding would have been different") (quoting *State v. Figueroa,* 639 A.2d 495, 500 (R.I.1994)); *accord Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). As noted, there was a strong possibility that Hassett may have received a much more severe sentence if he had not followed the advice of counsel and instead taken his case to trial. The attorney's advice to plead for a negotiated sentence was well within "the range of competence demanded of attorneys in criminal cases," *Miguel,* 774 A.2d at 22 (quoting *Dufresne,* 436 A.2d at 723), and Hassett has failed to demonstrate that he was prejudiced by his attorney's allegedly deficient performance. We therefore hold that his claim of ineffective assistance of counsel is without merit.

## IV

### Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record in this case shall be remanded to the Superior Court.